IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:19-CV-163-MR-WCM

JOHNNY RASH O/B/O SHELLY RASH, )
)
    Plaintiff, )   MEMORANDUM AND
)   RECOMMENDATION
v. )
)
ANDREW SAUL, )
Commissioner of Social Security, )
)
    Defendant. )
_____ )

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 12 & 14), which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B).

I. **Procedural Background**

Shelly Rash filed an application for disability insurance benefits, and thereafter amended her alleged disability onset date to December 2, 2015. Transcript of Administrative Record ("AR") pp. 201-209; 34; 71. Following denial of her claims on initial review and reconsideration, a hearing was held on May 9, 2018, where Ms. Rash appeared and testified. AR pp. 50-72.

On August 31, 2018, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 31-49. After Ms. Rash passed away on December 15, 2018, Johnny Rash ("Plaintiff") was substituted for purposes of her claim.

1

AR pp. 295-96. The Appeals Council denied Plaintiff's request for review of that decision and on December 10, 2019, Plaintiff timely filed the instant action. AR pp. 13-18; 1-3; Doc. 1. Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1

(4th Cir. 2005) (per curiam).

The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

The ALJ determined that Ms. Rash had the severe impairments of lumbar degenerative disc disease, depression and anxiety. AR p. 36. The ALJ further found that Ms. Rash had the RFC to perform

> medium work, as defined in 20 C.F.R. 404.1567(c), except [she] can have occasional interaction with supervisors and coworkers. She can have minimal contact with the general public. She is further limited to simple routine tasks.

AR p. 37.

Applying this RFC, the ALJ found that Ms. Rash was able to perform her past relevant work as a "stores laborer," and alternatively, that there were other jobs she could perform such that she was not disabled from December 2, 2015 (the alleged disability onset date) through December 31, 2017 (the date last insured). AR pp. 42-44.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the issue before the Court is not whether Ms. Rash was disabled but, rather, whether the Commissioner's decision that she was not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Analysis

Plaintiff makes two main arguments: (1) that Ms. Rash's RFC does not account for either her moderate limitations in concentration, persistence, and

4

pace or her limited ability to use her hands; and (2) that the ALJ's decision must be vacated because at the time of the May 9, 2018 hearing, the ALJ "was not appointed by the President, Courts of Law or Head of a Department" and therefore was in violation of the Appointments Clause of the United States Constitution. Pl.'s Mem. (Doc. 13), pp. 2-3.

### A. RFC

#### 1. Ability to Stay on Task

Though the ALJ restricted Ms. Rash to "simple routine tasks," Plaintiff argues that this restriction "fails to account for limitations in staying on task and the ALJ did not explain this omission in his decision." Doc. 13, p. 2.

An ALJ that finds a claimant has moderate limitations in concentration, persistence, or pace is not automatically required to include a corresponding limitation in the RFC. Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). Rather, under the Mascio standard, the ALJ has two (2) options. The ALJ may either (1) include additional limitations in the claimant's RFC to account adequately for the particular mental limitations, see e.g., Chesterfield v. Saul, 1:19-cv-90-MR, 2020 WL 249453, at * 3 (W.D.N.C. Jan. 15, 2020) (citing Davis v. Saul, No. 3:18-CV-00367-MR, 2019 WL 4233553, at *3 (W.D.N.C. Sept. 5, 2019) (citing Williams v. Berryhill, No. 1:16-CV-00064-MR, 2017 WL 927256, at *6 (W.D.N.C. Mar. 8, 2017)) (finding that an RFC limited to simple, routine tasks or unskilled work in a low stress or non-production environment, without

5

more, does not adequately account for moderate limitations in concentration, persistence, and pace), or, in the alternative, (2) explain the decision not to limit Plaintiff's RFC further. Shinaberry, 952 F.3d at 121 (explaining that Mascio did not impose a categorical rule requiring a specific RFC regarding concentration, persistence, or pace and stating that an ALJ could explain why such a limitation was not necessary); Rivera v. Berryhill, No. 3:17-CV-00376-GCM, 2019 WL 355536, at *2 (W.D.N.C. Jan. 29, 2019).

Here, the ALJ did not include a corresponding limitation in the RFC regarding Ms. Rash's ability to stay on task. The ALJ explained, however, that "the evidence of record is supportive that [Ms. Rash] could perform the mental demands of work activity on a sustained basis in a work environment consistent with the [RFC]." AR p. 40.

In developing the RFC, the ALJ considered the opinion of the state agency examiner, Dr. Carla Duszlak. See AR p. 40. Dr. Duszlak opined that Ms. Rash could "perform simple repetitive tasks but not detailed ones because of trouble focusing," that she would likely have trouble interacting with coworkers and the public, and that "she would likely have a hard time dealing with a full-time job." AR p. 40 (discussing AR p. 651). The ALJ gave "some weight" to Dr. Duszlak's opinions "as reflected in the relevant [RFC] findings," but gave "little weight" to Dr. Duszlak's opinions regarding Ms. Rash's ability to interact with others and deal with a full-time job because these opinions

6

were "based on a one time examination." AR p. 40. The ALJ also found these particular opinions to be inconsistent with the records of Ms. Rash's primary care provider, Dr. David Jaroszewski, which showed improvement in her symptoms of anxiety and depression. AR p. 40 (citing AR pp. 652-680, 712-715, 724-747, 766-804).

The ALJ also gave "some weight" to the opinions of the state agency medical consultants, Dr. Mercedes DeCubas and Dr. Nicole Mannis. See AR p. 41. The ALJ correctly stated that Dr. DeCubas opined that Ms. Rash "could carry out simple instructions, follow a schedule, and sustain a goal directed activity as physically able," although "timed work or work requiring quotas would not be suitable." AR p. 41 (citing AR p. 91). Additionally, the ALJ correctly noted that Dr. Mannis opined that Ms. Rash could "cooperate on simple, routine tasks and transactions," "adapt to most changes and task demands on a sustained basis," "understand, retain, and carry out simple instructions," and "consistently perform routine tasks on a sustained basis with minimal supervision." AR p. 41 (citing AR p. 115). Most significantly, the ALJ noted that Dr. Mannis concluded that Ms. Rash had "[l]imited ability to sustain concentration, persistence and pace for complex tasks for an extended period but should be able to complete simple tasks for an eight-hour period at an appropriate pace, and sustain this level across days and weeks." AR p. 41 (citing AR pp. 114-15).

Though the ALJ's reasoning could have been stated more explicitly, the ALJ's reliance on the opinions of Dr. Duszlak, Dr. DeCubas, and Dr. Mannis supports a conclusion that Ms. Rash could sustain concentration, persistence, and pace for simple, routine tasks but not for complex tasks. Accordingly, it appears that the ALJ considered Ms. Rash's ability to stay on task and that the RFC adequately reflects Ms. Rash's ability to stay on task. See Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (finding that the ALJ's discussion of "substantial record evidence in determining Plaintiff's mental RFC" and his reliance on the opinions of the non-examining state agency medical consultant "adequately explain[ed] why Plaintiff's limitations in concentration, persistence, or pace did not translate into any additional restrictions in the ALJ's hypothetical" to the Vocational Expert.)

### 2. Ability to Use Hands

Plaintiff also argues that the ALJ erred by failing to perform a function by function evaluation of Ms. Rash's ability to use her hands for handling, fingering and feeling, and by failing to explain "his choice to include no limitations on use of the hands in the RFC." Pl.'s Mem. (Doc. 13), p. 10.

The Commissioner counters that Plaintiff has failed to "establish how any medically determinable impairments affect functioning." Def.'s Mem. (Doc. 15), p. 14. The undersigned agrees that Plaintiff bears the burden of

8

establishing that Ms. Rash's impairments affect the functioning of her hands, Plummer v. Astrue, No. 5:11CV006-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011), report and recommendation adopted, No. 5:11-CV-00006-RLV, 2012 WL 1858844 (W.D.N.C. May 22, 2012), aff'd, 487 F. App'x 795 (4th Cir. 2012)("The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC.") but disagrees that Plaintiff has failed to meet this burden.

    The ALJ considered evidence that plainly indicates that Ms. Rash had certain limitations with respect to hand controls, handling, and fingering. For example, the ALJ recognized that Ms. Rash "endorsed occasional bilateral hand numbness, tingling, and dropping objects secondary to history of carpal tunnel syndrome." AR p. 38; see also AR pp. 64-65. In addition, the ALJ recognized that a consultative examination from March 10, 2016 indicated that there were "Dupuytren type contractures of [Ms. Rash's] hands with some triggering" though her "grip strength was equal and intact." AR p. 40 (citing AR pp. 641-42). The ALJ also noted the findings of Dr. Joan Crennan, who provided an opinion on initial review that Ms. Rash could "frequently but not continuously finger and handle with the bilateral upper extremities." AR p. 41 (citing AR p. 88) and the findings of state agency consultant Dr. Ellen Huffman-Zechman that Ms. Rash was limited to frequent bilateral handling and fingering due to bilateral CTS. AR p. 41 (citing AR p. 112).

9

Case 5:19-cv-00163-MR-WCM Document 17 Filed 10/23/20 Page 9 of 14

However, despite recognizing Ms. Rash's testimony and other evidence regarding the limitations of the use of her hands, the ALJ did not account for these limitations in the RFC, nor did he adequately explain why a manipulative restriction was omitted. Although the ALJ stated that he only gave "some weight" to Dr. Crennan's and Dr. Huffamn-Zechman's opinions because "the evidence of record as a whole that includes new evidence the State agency consultants did not consider does not support … manipulative limitations," AR pp. 41 & 42, the ALJ failed to explain what "new evidence" conflicted with the opinions of the State agency consultants. In addition, he did not explain why Ms. Rash's testimony regarding the impairments of her hands was disregarded, or why limitations regarding her hands were omitted from the RFC.

The undersigned will therefore recommend remand on this basis.

### B. Appointments Clause

Plaintiff argues that the ALJ's decision must be reversed and remanded because the ALJ had not been properly appointed under the Appointments Clause at the time he presided over the May 9, 2018 hearing. The Commissioner argues that Plaintiff has waived this argument because it was not raised at any point in the administrative proceedings.

The Fourth Circuit has not ruled on the question of whether exhaustion is required for Appointments Clause challenges and Plaintiff urges this Court

to follow the approach found in Cirko v. Comm'r of Social Security, 948 F.3d 148 (3d Cir. 2020), which held that administrative exhaustion was not required.

Courts in this district, however, have found that claimants who have failed to raise Appointments Clause challenges before the Commissioner have forfeited those challenges. Wilhelm v. Saul, No. 1:19-cv-325-KDB, 2020 WL 5535021, at * 5 (W.D.N.C. Sept. 15, 2020) (collecting cases; finding plaintiff waived and forfeited Appointments Clause challenge by failing to raise the issue during administrative proceedings); Sweat v. Berryhill, No. 1:18-cv-42-GCM, 2019 WL 1856964, at * 1 (W.D.N.C. April 24, 2019) (considering applicability of Lucia v. SEC, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018) and citing Whiteside v. Berryhill, 1:18-cv-00176-FDW, 2019 WL 1639936 (W.D.N.C. Apr. 16, 2019); Jackson v. Berryhill, 1:18-cv-00003-RJC, 2019 WL 1332377 (W.D.N.C. Mar. 25, 2019); Britt v. Berryhill, No. 1:18-cv-00030-FDW, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018); Garrison v. Berryhill, No. 1:17-cv-00302-FDW, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018)); see also Wampler v. Saul, No 1:19-cv-00092-MOC, 2019 WL 6404403, at *6 (W.D.N.C. Nov. 27, 2019) ("Plaintiff's failure to assert a challenge to the ALJ's appointment before the agency at any point in the administrative proceedings forfeited his Appointments Clause claim"); Lamb v. Berryhill, No. 1:18-cv-202-MOC, 2019 WL 4197182, at * 2-3 (W.D.N.C. Sept. 4, 2019); Weatherman v.

11

Berryhill, No. 5:18-cv-45-MOC, 2018 WL 6492957, at * 4 (W.D.N.C. Dec. 10, 2018).

Further, recent decisions from this district have declined to follow Cirko. See Digregorio v. Saul, No. 1:19-cv-268-MOC, 2020 WL 4437271, at * 7 (W.D.N.C. Aug. 3, 2020); Bailey v. Saul, No. 1:18-CV-371-FDW, 2020 WL 1429240, at * 4 (W.D.N.C. March 19, 2020) (citing Cirko and noting that "[t]he Third Circuit alone allows an Appointments Clause claim to be raised at the first time at the district court level."); Petty v. Saul, No. 1:19-CV-12-FDW, 2020 WL 1441436 (W.D.N.C. March 19, 2020), appeal pending (same). In both Bailey and Petty, the court explained that "most of the district courts who have ruled on the issue have rejected Appointments Clause claims that were not raised at the administrative level." Bailey, 2020 WL 1429240 at * 5 (collecting cases); Petty, 2020 WL 1441436, at * 8 (collecting cases). In both Bailey and Petty, the court reasoned that requiring administrative exhaustion "is further supported by the SSA's regulations requiring claimants to raise *all* issues, including objections to the ALJ conducting the hearing, at the administrative level." Id. (emphasis in Bailey and Petty) (citing 20 CFR § 404.933(a)(2) (Requiring a claimant to submit in writing "[t]he reasons [the claimant] disagree[s] with the previous determination or decision.") & 20 CFR § 404.940 ("If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity.")).

12

Accordingly, the undersigned concludes that Plaintiff's Appointments Clause challenge to the ALJ's decision does not require remand.

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 12) be **GRANTED** and that the Commissioner's Motion for Summary Judgment (Doc. 14) be **DENIED.**

Signed: October 23, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).